UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

A.B., BY AND THROUGH HIS
PARENTS AND NEXT FRIENDS,
K.B. and R.B., and K.B. and R.B.,
Individually,

             Plaintiffs,

v

MICHIGAN DEPARTMENT OF
EDUCATION,

             Defendant.

_____/

HON. PAUL L. MALONEY

MAG. MAARTEN VERMAAT

No. 2:19-cv-00258-PLM-MV

**PLAINTIFF'S RESPONSE IN
OPPOSITION TO MICHIGAN
DEPARTMENT OF
EDUCATION'S MOTION TO
DISMISS**

Erin H. Diaz (P80388)
Mitchell D. Sickon (P82407)
Michigan Protection and Advocacy
Service, Inc.
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755
ediaz@mpas.org
msickon@mpas.org

Justin S. Gilbert (Admitted March 12, 2020)
Gilbert Law, PLC
100 W. Martin Luther King Blvd., Suite 1067
(423) 756-8023
Chattanooga, TN 37402
justin@schoolandworklaw.com

*Attorneys for Plaintiffs*

Elizabeth R. Husa Briggs (P73907)
Travis Comstock (P72025)
Attorneys for Defendant
Michigan Department of Attorney General
Health, Education & Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
briggse1@michigan.gov
comstockt@michigan.gov

_____/

# TABLE OF CONTENTS

Index of Authorities ..............................................................................iii, iv, v, vi, vii, vii

Introduction .................................................................................................................1

Standard of Review ......................................................................................................2

Background ...................................................................................................................4

      A.     First State Administrative Complaint....................................................4

      B.     Second State Administrative Complaint ..............................................5

      C.     Third Request to MDE .......................................................................6

      D.     Fourth Request to MDE: Due Process ................................................6

Argument

      I.     Exhaustion .........................................................................................9

              A.     PLAINTIFFS DID EXHAUST.......................................................9

              B.     FUTILITY FINDING IS ENTITLED TO DEFERENCE AND COLLATERAL ESTOPPEL ...............................................10

              C.     "JUDICIAL ESTOPPEL" AND "ACCESS TO THE COURTS" BAR MDE'S DEFENSE............................................13

              D.     EXHAUSTION *AGAINST* THE LOCAL DISTRICT DID OCCUR .................................................................................15

      II.     PLAINTIFFS STATE A COGNIZABLE CLAIM UNDER ADA AND SECTION 504 ....................................................................10

              A.     PARENTS HAVE STANDING ....................................................20

               B.     THE COMPLAINT EASILY ALLEGES DELIBERATE INDIFFERENCE .......................................................................23

i

III.    ELEVENTH AMENDMENT IS NO BAR BECAUSE MMSEA AND MARSE RAE INCORPORATED INTO IDEA ...........................29

IV.    STATUTE OF LIMITATIONS: ALL CLAIMS ARE TIMELY FILED AND, THEREFORE, THERE IS NO LIMITATION ON THE PERIOD OF RESPONSIBILITY ....................................35

V.    PLAINTIFFS ARE REQUESTING MONEY DAMAGES UNDER SECTION 504 AND THE ADA .............................................................37

Certificate of Service (E-File).................................................................39

Plaintiffs' Certificate of Compliance .......................................................40

## INDEX OF AUTHORITIES

*A.G. v. Paradise Valley Unified Sch. Dist.*
   *No. 69*, 815 F.3d 1195 (9th Cir. 2016)....................................................23

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009).....................................................................3

*Avila v. Spokane Sch. Dist.*
   81 F.3d 936, 944 (9th Cir. 2017) ...................................................36

*Bassett v. NCAA.*
   528 F.3d 426, 430 (6th Cir. 2008) ...................................................3

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007).....................................................................3

*Brown v. Matauszak*
   415 F. App'x 608(6th Cir. 2011) ..................................................15

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*
   532 U.S. 598 (2001).............................................................8, 16, 17

*Burlington Sch. Comm. v. Dep't of Educ.*
   471 U.S. 359 (1985).............................................................29, 30, 32

*Burton v. Cleveland Heights-University Heights City Sch. Dist. Bd. of Educ.*
   No. 1:17 CV 134, 2017 U.S. Dist. LEXIS 161006, at *9 n.4
   (N.D. Ohio Sep. 29, 2017) ..........................................................21

*C.M. v. Cedar Park Charter Acad. PTO*
   1:18-CV-644-RP, 2019 WL 1856414, at *4 (W.D. Tex. Apr. 24, 2019)...............14

*Christopher v. Harbury*
   536 U.S. 403 (2002)...................................................................15

*Covington v. Knox County Sch. Sys.*
   205 F.3d 912 (6th Cir. 2000) .........................................................11

*D.R. v. Mich. Dep't of Ed*
  2017 WL 4348818 (E.D. Mich. Sept. 29, 2017)..........................................11, 12, 24

*David D. v. Dartmouth Sch. Comm.*
  775 F.2d 411 (1st Cir. 1985).............................................................................30, 31

*Dellmuth v. Muth*
  491 U.S. 223, 109 S. Ct. 2397 (1989).....................................................................32

*Doe By and Through Doe v. Board of Education of Tullahoma City Schools*
  9 F.3d 455 (6th Cir. 1993) .......................................................................................31

*Doe v. Ohio*
  2:91-CV-464, 2012 WL 12985973, at *3 (S.D. Ohio Feb. 16, 2012)..............24, 25

*E.F. by Fry v. Napoleon Cmty Schs.*
  12-15507, 2019 WL 4670738, at *17 (E.D. Mich. Sept. 25, 2019) ..........................2

*Experimental Holdings, Inc. v. Farris*
  503 F.3d 514 (6th Cir. 2007) ...................................................................................31

*F.C. v. Tenn. Dep't of Educ.*
  745 F. App'x 605 (6th Cir. 2018) ..............................................................................7

*Forrest Grove Sch. Dist. v. TA*
  557 U.S. 230 (2009).................................................................................................18

*Fort Bend County v. Davis*
  139 S.Ct. 1843 (2019)..............................................................................................10

*G.L. v. Ligonier Valley Sch. Dist. Auth.*
  802 F.3d 601 (3d Cir. 2015).....................................................................................36

*Gaylor v. Hamilton Crossing CMBS*
  582 Fed. Appx. 576 (6th Cir. 2014)...........................................................................4

*Gunasekera v. Irwin*
  551 F.3d 461 (6th Cir. 2009) .....................................................................................2

*Holden v. Miller-Smith*
    28 F. Supp. 3d 729 (W.D. Mich. 2014) .................................................35

*Honig v. Doe*
    484 U.S. 305 (1998).........................................................................11

*In re Nat'l Prescription Opiate Litig.*
    1:17-MD-2804, 2020 WL 871539, at *3 (N.D. Ohio Feb. 21, 2020) ..................3, 4

*L.L. ex rel. L.L. v. Tennessee Department of Education*
    3:18-CV-00754, 2019 WL 653079, at *4 (M.D. Tenn. Feb. 15, 2019) ......11, 12, 23

*Long v. Dawson Springs Indep. Sch. Dist.*
    197 Fed. Appx. 427 (6th Cir. 2006).........................................................37

*Lopez-Young v. District of Columbia*
    211 F. Supp. 3d 42, 57 (D.D.C. 2016)...................................................18

*MX Group, Inc. v. City of Covington*
    293 F.3d 326 (6th Cir. 2002) ..............................................................21

*Maher v. Gagne*
    448 U.S. 122, 126 n.8 (1980).............................................................16

*Musson Theatrical Inc. v. Fed. Express Corp.*
    89 F.3d 1244 (6th Cir. 1996) ...............................................................4

*New Hampshire v. Maine*
    532 U.S. 742 (2001)........................................................................14

*P.G. through A.G. v. Genesis Learning Ctrs.*
    No. 3:19-CV-00288, 2019 WL 3231363, at *3 (M.D. Tenn. July 18, 2019)..........10

*Pennhurst State Sch. & Hosp. v. Halderman*
    465 U.S. 89 (1984)..........................................................................31

*Perez v. Sturgis Public Schools*
    1:18-CV-1134, 2019 WL 6907138 (W.D. Mich. Dec. 2019) ...........................18, 19

*Popovich v. Cuyahoga County Ct. of Com. Pleas, Dom. Rel. Div.*
  150 Fed. Appx. 424 (6th Cir. 2005) ....................................................21, 22

*R.K. v. Bd. of Educ.*
  637 F. App'x 922 (6th Cir. 2016) .......................................................23, 24

*R.K. ex rel. J.K. v. Bd. of Educ. of Scott County, Ky.*
  637 Fed. Appx. 922 (6th Cir. 2016) ..........................................................37

*S.B. v. California Department of Education*
  327 F. Supp. 3d 1218 (E.D. Cal. 2018) ........................................18, 19, 20

*S.P. v. Knox Cty. Bd. of Educ.*
  329 F. Supp. 3d 584 (E.D. Tenn. 2018) ......................................................9

*Sch. Comm. of Town of Burlington, Mass. v. Dept. of Educ. of Mass.*
  471 U.S. 359 (1985) ................................................................................37, 38

*Somberg ex rel. Somberg v. Utica Cmty. Schs.*
  908 F.3d 162 (6th Cir. 2018) ....................................................................37

*T.C. v. Hempfield Area Sch. Dist.*
  CV No. 17-1507, 2018 WL 3707419, at *9 (W.D. Pa. Aug. 3, 2018) ...................23

*Tackett v. M & G Polymers, USA, LLC*
  561 F.3d 478 (6th Cir. 2009) ......................................................................3

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*
  489 U.S. 782 (1989) ..................................................................................16

*Thomas v. Cincinnati Bd. of Educ.*
  918 F.2d 618 (6th Cir. 1990) ....................................................................31

*Tompkins ex rel. A.T. v. Troy Sch. Dist.*
  199 Fed. Appx. 463 (6th Cir. 2006) ..........................................................17

*Town of Burlington v. Dep't of Educ. of Mass.*
  736 F.2d 773 (1st Cir. 1984) ....................................................................29

*Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dept. of Educ.*
   5:06-CV-139, 2008 WL 351651, *7 (W.D. Mich. Feb. 6, 2008) ........................... 17

*Trollinger v. Tyson Foods, Inc.*
   370 F.3d 602 (6th Cir. 2004) .................................................................................. 3

*United States v. Utah Construction Co.*
   384 U.S. 394 (1966) ....................................................................................... 12. 13

*Y.G. v. Riverside Unified Sch. Dist.*
   774 F. Supp. 2d 1055 (C.D. Cal. 2011) ............................................................ 9, 10

*Warda v. C.I.R.*
   15 F.3d 533 (6th Cir. 1994) .................................................................................. 14

**Statutes**:

MCL § 380.1701 ............................................................................................................ 30
20 U.S.C. § 1221e–3 ..................................................................................................... 32
20 U.S.C. § 1403 ........................................................................................................... 32
20 U.S.C. § 1412(a) ...................................................................................................... 30
20 U.S.C. § 1412(a)(11) ................................................................................................ 31
20 U.S.C. § 1412(a)(6) .................................................................................................. 30
20 U.S.C. § 1413(g)(1)(B) ............................................................................................ 35
20 U.S.C. § 1415(a) ...................................................................................................... 30
20 U.S.C. § 1415(i)(2)(C)(iii) ....................................................................................... 37
20 U.S.C. § 1415(*l*) ...................................................................................................... 11
20 U.S.C. § 1415(f)(3)(C) ....................................................................................... 35, 36
29 U.S.C. § 794a(2) ...................................................................................................... 21

**Regulations**:

28 C.F.R. § 35.130(g) ................................................................................................... 21
34 C.F.R. § 149(a)(2) .................................................................................................... 31
34 C.F.R. §§ 300.151–300.153 ............................................................................... 31, 32
34 C.F.R. § 300.151(a) .................................................................................................. 32
34 C.F.R. § 300.600(e) .................................................................................................. 37

**<u>Rules</u>**:

Fed. R. Civ. P. 12(b)(1)..................................................................................3, 4
Fed. R. Civ. P. 12(b)(6)............................................................................4, 26, 27
MARSE R 340.1700 ......................................................................................30
MARSE R 340.1701 ......................................................................................30
MARSE R 340.1851-55 ..................................................................................33
MARSE R 340.1855 ...................................................................................33, 34

**INTRODUCTION**

In February 2019, Plaintiffs filed a due process complaint against Defendant, the Michigan Department of Education (MDE), the local school district, and the intermediate school district for failing to provide A.B., then a nine-year-old student, a free appropriate public education for over three years. The due process complaint included allegations against MDE based on the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act (Section 504), and the Americans with Disabilities Act (ADA) among others. MDE moved for both dismissal from the due process hearing and dismissal of the Section 504 and ADA claims all for lack of jurisdiction. Defendants were successfully dismissed from the administrative forum, along with Plaintiffs' Section 504 and ADA claims. Plaintiffs' allegations are rightfully brought before this Court, and the Court should hold MDE responsible for its violations of federal law.

When the administrative law judge (ALJ) dismissed MDE at the due process hearing, Plaintiffs' claims against *Defendant* were exhausted. Plaintiffs settlement with the local school district was also approved and adopted by the ALJ, resulting in judicial imprimatur sufficient for exhaustion. The ALJ's dismissal of Defendant correctly identified the structural nature of Plaintiffs' claims, demonstrating both the futility of administrative exhaustion and that proper jurisdiction is in this Court.

1

Plaintiffs must have access to the courts for the opportunity to vindicate Plaintiffs' federal rights despite MDE's attempts to escape accountability.

Regarding Plaintiffs' Section 504 and ADA claims, A.B.'s parents have experienced associational discrimination, resulting in injury because of MDE's violation of federal law. Plaintiffs' First Amended Complaint (FAC) provides this Court sufficient facts to demonstrate that Defendants have acted with deliberate indifference.

Because the state law at issue is incorporated into and enforceable under the IDEA, the Defendant's Eleventh Amendment argument is moot. Plaintiffs timely filed all claims, and the period of redressability goes back as far as Defendant's violations. Lastly, under IDEA, Plaintiffs are not seeking damages, but an educational fund to compensate them for A.B.'s educational deprivation. As a result, Defendants' motion to dismiss should be DENIED in its entirety.

## STANDARD OF REVIEW

Under the well-known standard of Fed. R. Civ. P. 12(b)(6), the reviewing Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The "complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative

2

level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007)).

The Complaint "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. NCAA*., 528 F.3d 426, 430 (6th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Importantly, "[a] district court may dismiss a complaint for failure to state a claim 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *In re Nat'l Prescription Opiate Litig.*, 1:17-MD-2804, 2020 WL 871539, at *3 (N.D. Ohio Feb. 21, 2020) (quoting *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004) (citations omitted)) (Exhibit 6).

Rule of Civil Procedure 12(b)(1) focuses on "lack of jurisdiction over the subject matter," and the standard depends on whether the defendant is making a facial or factual challenge to subject matter jurisdiction. A facial attack questions only the sufficiency of the pleadings, whereas a factual attack requires a court to weigh factual evidence to determine if subject-matter exists. *In re: Nat'l Prescription Opiate Litig*,

*supra*, at \*57. For a facial attack, the court must accept the allegations in the complaint as true, drawing all inferences in favor of the Plaintiff, and determine whether Plaintiffs have stated a plausible claim. *Id.*, at \*58 (citing *Gaylor v. Hamilton Crossing CMBS*, 582 Fed. Appx. 576, 579 (6th Cir. 2014)).  This burden is not to be onerous. *Id.*, at \*58 (citing *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).

## BACKGROUND

Under both Rule 12(b)(6) and (b)(1), the Complaint is exceptionally well pled in terms of its factual richness and detail, particularly concerning MDE's tragic failures and indifference.

The Amended Complaint opens, at page 1, describing how *state-level* resources are necessary for this child, A.B., in rural Ontonagon, with A.B. seeking help through two State administrative complaints, requests to the State Attorney General's Office, *and* a due process action against the State. (First Amended Complaint (FAC) ¶ 1, ECF No. 12, PageId.128). The lack of help cost A.B. over *three years* of education. (*Id.*, PageId.128).

### A.    First State *Administrative* Complaint

A.B.'s needs for basic friendships are canvassed early, explaining that the nature of his *functional* disability requires resources to assist him. (*Id.* at ¶¶ 11-12, PageId.131). Being from the small village of Ontonagon, the local school district

began delivering only one hour per day, 3-5 days a week. (*Id.* at ¶ 13, PageId.131-132).

A.B. filed an administrative complaint with the State of Michigan's Department of Education (MDE) due to the lack of a full day, and lack of behavior supports and appropriate education. (*Id.* at ¶ 14, PageId.132-133). While MDE found in A.B.'s favor *on paper*, nothing changed for A.B. *in practice.* (*Id.* at ¶¶ 15-17, 21-22, PageId.132-133, 134-135). He never received an entire instructional day in either school year 2016-2017 or 2017-2018. (*Id.* at ¶ 19, PageId.134). Thus, A.B. alleges MDE failed in its *enforcement* obligations. (*Id.* at ¶ 20, PageId.134).

**B.    Second State Administrative Complaint**

The local district believed it could not educate A.B. at school due to the nature of his disability and its accompanying challenging behaviors. (*Id*. at ¶¶ 22-23, PageId.134-135). Thus, on April 4, 2018, A.B. filed his second state complaint to MDE and this one "*targeted the MDE.*" (*Id*. at ¶ 23, PageId.135). A.B. alleged MDE failed to supervise and monitor the local district, failed to correct the non-compliance, and just allowed the violations to continue. (*Id*. at ¶ 24).

MDE agreed—but again, *on paper only*. (*Id*. at ¶ 26, PageId.136). It blamed the local district for "paperwork" untimeliness, providing A.B. nothing in the way of a remedy of compensatory education or behavioral supports. (*Id*. at ¶ 26, PageId.136). Thus, the "root problem" of MDE's failure to supervise and monitor resulted in

A.B.'s continuing exclusion and lack of an appropriate education. (*Id*. at ¶ 27, PageId.136).

### C.    Third Request to MDE

After MDE's second refusal to provide meaningful help—instead shuffling paperwork—A.B. went directly to the Michigan Attorney General's office. (*Id*. at ¶ 29, PageId.136). (The same department filing the Motion to Dismiss). This time, on September 26, 2018, MDE said it would do better through a direct observation, review of records, and meetings with local district staff. (*Id*. at ¶ 30, PageId.137).

To a degree, it did, outlining a plan to get A.B. more hours in school through more behavior supports. (*Id*. at ¶ 31, PageId.137). However, A.B.'s behavioral challenges—all due to disability—remained. (*Id*. at ¶¶ 32-35, PageId.137-138). At one point, the local district determined that A.B. could not come back to school *at all*, and he was temporarily educated at a "local police station," an unsuccessful placement. (*Id*. at ¶ 36, PageId.138).

### D.    Fourth Request to MDE: Due Process

In February of 2019, the local district's superintendent leveled with the family: The superintendent said the local district was too small, too rural, lacked the resources, staff, and levels of expertise to help A.B. (*Id*. at ¶ 38, PageId.139). Hearing this, A.B. filed a due process complaint naming *not only* the local district but also the

intermediate school district and MDE.[1] At this point, A.B. had suffered three years of lost education. (*Id*. at ¶ 41, PageId.139).

In the spring of 2019, the local district considered developing a regional program designed for students with emotional impairments. However, the local district could not implement this because MDE refused to support it. (*Id*. at ¶ 42, PageId.140).

In the due process administrative forum, MDE filed a motion to dismiss arguing that an ALJ has no jurisdiction over MDE. (*Id*. at ¶ 43, PageId.140). Over Plaintiffs' objection that MDE was subject to the ALJ's jurisdiction—see *F.C. v. Tenn. Dep't of Educ.*, 745 F. App'x 605 (6th Cir. 2018)—the ALJ agreed with MDE and dismissed MDE. (FAC ¶ 43, ECF No. 12, PageId.140). At that point, MDE literally offered no help to the local district or A.B; "it *watched* a rural village— Ontonagon Area School District—defend against a child with special needs, A.B., who desperately needed an appropriate education, placement, and supports." (*Id*. at ¶ 44, PageId.140) (emphasis added). This continuing "hands off" approach "provided A.B. with no relief at all." (*Id.*, PageId.140).

In August of 2019, the local district leveled with the family a second time. The local district, A.B. learned, *had been seeking* help from MDE. (*Id*. at ¶ 45,

---

[1] The due process complaint made claims under IDEA, Section 504, Title II of the ADA, MARSE, and Michigan Persons with Disabilities Civil Rights Act, against all entities.

PageId.140-141).   Shockingly, to the family, MDE "*knowingly* failed to provide consistent or meaningful assistance." (*Id*. at ¶ 46, PageId.141).

*If it was true*, in fact, that MDE would not provide the necessary assistance or funding, and the Village of Ontonagon *could not provide* what is necessary, the family wanted such an admission. The family demanded two things: (1) an admission in writing of the intentional failures by MDE as part of a settlement agreement; and (2) that any settlement with the local district be *approved* by the administrative law judge (hearing officer), a "judicial imprimatur."[2] The local district agreed, gave the admission, and the hearing officer approved and adopted the terms of the settlement. (*Id*. at ¶ 49, PageId.141-142).

With MDE having been dismissed for lack of jurisdiction, and Plaintiffs having the judicial imprimatur against the local district (alleging MDE's fault), Plaintiffs filed claims in the Amended Complaint in this District Court against MDE under IDEA, (*Id*. at ¶¶ 54-62, PageId.143-144), and Section 504 and the ADA (*Id*. at ¶¶ 63-67, PageId.144-145).

MDE seeks yet another dismissal, this time on the following grounds: (1) failure to exhaust; (2) lack of standing and insufficiency of pleading under Section 504 and ADA; (3) 11th amendment immunity; (4) statute of limitations prior to

---

[2] *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598 (2001) (approved settlement agreements are a judicial imprimatur).

December 2017; and (5) a damages argument under IDEA. None has merit. In the "Argument" section below, Plaintiffs address all these arguments in the order presented by MDE's brief, beginning with exhaustion.

## ARGUMENT

## I.    EXHAUSTION

Knowing MDE's propensity for arguing that *every* decision-making forum lacks jurisdiction over it, Plaintiffs have gone to great lengths to clothe MDE with notice and requests for help and attempted to exhaust every single claim. After two state complaints, and an attempt at intervention with the State Attorney General, Plaintiffs brought a due process action against MDE, receiving a detailed opinion on MDE's own motion that Plaintiffs' claims belonged in federal court.

### A.    PLAINTIFFS *DID* EXHAUST

Many courts hold that an ALJ's order of dismissal, itself, *constitutes* the exhaustion because it is final and there is nothing more a student can do in terms of administrative remedies.

- *S.P. v. Knox Cty. Bd. of Educ.*, 329 F. Supp. 3d 584 (E.D. Tenn. 2018) ("TDOE's motion to dismiss for lack of administrative jurisdiction was heard on substance and granted. Thus, Plaintiffs did exhaust their administrative remedies, and TDOE's motion to dismiss for failure to exhaust administrative remedies is denied.");

- *Y.G. v. Riverside Unified Sch. Dist.*, 774 F. Supp. 2d 1055, 1062 (C.D. Cal. 2011) ("Finally, the Court finds that plaintiffs have exhausted their administrative remedies because the FAC alleges that plaintiffs filed a

due process hearing with the OAH, which the OAH dismissed on April 8, 2010 for lack of jurisdiction."); and

- *P.G. through A.G. v. Genesis Learning Ctrs.*, No. 3:19-CV-00288, 2019 WL 3231363, at *3 (M.D. Tenn. July 18, 2019) ("even if the exhaustion requirement were jurisdictional, it would not bar jurisdiction here because P.G. did not actually fail to exhaust these claims. He brought the claims before the administrative law judge. He pursued them, and, at least at that level and with regard to this defendant, he lost. He did everything the IDEA requires him to do).

These courts appear correct. Since a 2019 Supreme Court decision, administrative-exhaustion, at least under Title VII, is not even jurisdictional; instead, it is merely a "claims processing rule." *Fort Bend County v. Davis*, 139 S.Ct. 1843, 1851-52 (2019). This was noted in *P.G.*, *supra*, where the court found that the attempt to exhaust and receipt of dismissal upon the defendant's own motion *was* satisfactory. 2019 WL 3231363, at *3.

There can be no doubt that the ALJ in this case engaged in "claims processing." It was *MDE* who argued the ALJ lacked jurisdiction over MDE in a due process hearing. (Def.'s Brief 6, ECF No. 13-1, PageId.171). Plaintiffs disagreed, and the ALJ issued a detailed opinion about why the case belongs in federal court, not administrative court. (Def.'s Mot. Dismiss Ex. 12, ECF No. 13-5, PageID.333-338). Applying case law, the ALJ concluded that Plaintiffs' IDEA claims were mixed, but mostly "structural" in nature, and therefore, MDE must be sued *in federal court*, not in administrative court. (*Id.*, PageID.335-336).

**B.     FUTILITY FINDING IS ENTITLED TO DEFERENCE AND COLLATERAL ESTOPPEL**

Alternatively, the ALJ's order by its own terms may be viewed as a finding of the *futility* in exhausting. While the IDEA, at 20 U.S.C. § 1415(*l*) requires exhaustion of administrative remedies prior to bringing suit in federal or state court, the Supreme Court and Sixth Circuit have recognized exceptions to the exhaustion requirement. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000).

If exhaustion would be "futile" or provide an inadequate remedy, then exhaustion is excused. *Id.* (citing to *Honig v. Doe*, 484 U.S. 305, 326–27 (1998)). For example, the Eastern District of Michigan holds that systemic claims against MDE are "futile" to exhaust. *D.R. v. Mich. Dep't of Ed*, 2017 WL 4348818 (E.D. Mich. Sept. 29, 2017).

The ALJ's order dismissing the case is detailed, ultimately concluding (like *D.R.*) that this federal court is the proper forum for the claims against MDE. (Def.'s Mot. Dismiss Ex. 12, ECF No. 13-5, PageID.335). In reaching this decision, the ALJ cited *D.R. v. Mich. Dep't of Educ.*, which "suggests that Federal District Court is an appropriate forum" for the claims against MDE. (*Id.*, PageID.335.) (citing to *D.R.*, 2017 WL 4348818 , at *7)). The ALJ also cited *L.L. ex rel. L.L. v. Tennessee Department of Education*, which addresses "Causes of Action Against State Educational Agencies Under the IDEA." (*Id.*, PageID.335-336) (citing *L.L.*, 3:18-CV-00754, 2019 WL 653079, at *4 (M.D. Tenn. Feb. 15, 2019)).

11

The ALJ found that the claims being asserted against MDE contain "structural" components and seek "sweeping policy changes" that are simply "beyond the efficacy of the administrative process and therefore not best suited for a due process hearing." (Def.'s Mot. Dismiss Ex 12, ECF No. 13-5, PageID.336). The due process request was "outside the realm of an Administrative Law Judge's authority under IDEA and instead falls within the scope of equitable powers granted to a court of competent jurisdiction." (*Id.*, PageID.336-337).

The ALJ is right. Structural claims against a state education agency proceed to federal court directly. *L.L.*, 2019 WL 653079, at *6; *D.R.*, 2017 WL 4348818, at *3. In *L.L.*, the Middle District of Tennessee required exhaustion by two children directly against the state education department (TDOE) in a due process hearing for non-systemic, or structural claims, but allowed a direct action against the state in federal court for systemic or structural ones. *L.L.*, at *6-7.

Similarly, in *D.R.*, the MDE filed a motion to dismiss for failure to exhaust administrative remedies. 2017 WL 4348818, at *3. However, because the allegations against MDE were systemic in nature, the actions were properly in federal court *against MDE*. *D.R.*, at *3-6.

MDE cannot relitigate the same issue in this forum. The ALJ ruled on the mostly *structural* nature of the Plaintiffs' claims such that they fall outside of due process. That decision is entitled to deference and *collateral estoppel* effect. *United*

*States v. Utah Construction Co.*, 384 U.S. 394, 421-22 (1966) ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.").

Notably, the local school district did not even have the *funding* to provide appropriate services for A.B. (*See* FAC Ex. A, ECF No. 12-1, PageID.150). It could not have created the program anyway. Thus, the action against the state must proceed separately, as a structural matter.

Only after receiving the detailed order from the ALJ, and its finality, did Plaintiffs file suit in federal court. Thus, they did not try to evade due process. They did not attempt any "artful pleading." And their First Amended Complaint in this Court mirrors the substantive relief the ALJ said an administrative court simply could not provide.

Accordingly, under the futility doctrine and collateral estoppel, the ALJ dismissed to a court of competent jurisdiction for structural reasons, and the Plaintiffs have now abided by that order.

## C. "JUDICIAL ESTOPPEL" AND "ACCESS TO THE COURTS" BAR MDE'S DEFENSE

MDE cannot possibly argue that *every* court lacks jurisdiction over it. Such legal inconsistency will not survive the doctrines of judicial estoppel and/or access to the courts.

"Judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding." *Warda v. C.I.R.*, 15 F.3d 533, 538 (6th Cir. 1994) (citations omitted). It applies in IDEA exhaustion cases. "Defendants now argue the opposite. In their motion to dismiss, Defendants argue that this Court lacks subject matter jurisdiction over Plaintiffs' education-related claims because they failed to exhaust their administrative remedies under the IDEA." *C.M. v. Cedar Park Charter Acad. PTO*, 1:18-CV-644-RP, 2019 WL 1856414, at *4 (W.D. Tex. Apr. 24, 2019) (Exhibit 7).[3]

MDE cannot argue that the administrative court *lacks* jurisdiction over MDE, get a ruling to that effect and, then, argue to this federal court that Plaintiffs failed to exhaust administrative remedies. MDE "convinced a court to accept the prior position" and it is bound with that decision. *Id.* Judicial estoppel precludes any party from "deliberately changing positions according to the exigencies of the moment," and "prevents parties from playing fast and loose with the courts." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001).

Similarly, MDE cannot deny Plaintiffs "access to the courts." MDE's Motion for Summary Disposition at the due process hearing began with this sentence: "This motion is not about *whether* Petitioners can assert allegations against State

---

[3] The plaintiffs in *C.M.* voluntarily dismissed their complaint based on the Defendant's arguments at due process, preventing judicial estoppel from attaching only for this reason. *Id.* at *12.

Respondents. It is about *where* they can assert them." (Exhibit 1, MDE's Mot. Summ. Disp.  2). Now in federal court, MDE says federal court is not the *where* either.

To MDE, no forum is the correct forum, meaning A.B.'s case will reside in a permanent legal purgatory. Having no access to any forum presents a denial of "access to the courts" by the state. *See Christopher v. Harbury*, 536 U.S. 403, 414-15, (2002) ("[T]he very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong."); *Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) (unpublished).

In other words, MDE is telling both courts—the administrative forum first, and this forum later—that jurisdiction is *proper in the other forum*. MDE succeeded at the administrative level and now it attempts to do so here. If this thinking were to prevail, MDE will have "shut [Plaintiff] out of court." *Christopher*, 536 U.S. at 415.

### D.    EXHAUSTION *AGAINST THE LOCAL DISTRICT* DID OCCUR

Although it is hardly prominent in MDE's brief, MDE writes of "Plaintiffs' obligation to fully exhaust as to the claims alleged *against the District and the ISD*." (Def.'s Brief 19, ECF No. 13-1, PageID.184) (emphasis added). That emphasized language is important because MDE seems to be arguing that Plaintiffs did not exhaust against the *local school* district, and that MDE derives a vicarious benefit.

This is irrelevant to the structural nature of Plaintiffs' claims that must be heard in federal court. But it is also incorrect. Plaintiffs *did* exhaust against the local district.

Exhaustion occurred—or "claims processing"—did occur because the settlement agreement was submitted to the ALJ for approval, resulting in a "judicial imprimatur." In *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598 (2001), the Supreme Court addressed whether a settlement without a "judicial imprimatur" authorized jurisdiction in federal court to recover attorneys' fees in civil rights cases.

The Supreme Court explained that "enforceable judgments on the merits *and court-ordered consent decrees* create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* at 604 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)).

As spelled out by the Court, the terms of a "private contractual settlement will often be lacking unless the terms of the agreement are *incorporated in the order of dismissal.*" *Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 604 n.7 (emphasis added). For example, consent decrees, even if they do not have an admission of liability, are considered to have judicial imprimatur. *Id.* at 604 (citing *Maher v. Gagne,* 448 U.S. 122, 126 n.8 (1980)). Therefore, it is *not* necessary to have a "judgment on the merits" to effectuate legal change and proceed to federal court.

*Buckhannon*'s reasoning about consent decrees applies to settlements in IDEA cases. *Tompkins ex rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 466 (6th Cir.

2006) ("Both judgments on the merits and 'settlement agreements enforced through a consent decree' qualify as 'court-ordered' changes with 'the necessary judicial imprimatur'" (quoting *Buckhannon*, 532 U.S. at 604, 605)) (unpublished).

This Court, too, addressed the necessary content of the consent decree under *Buckhannon*. They *must* "incorporate the settlement or . . . seek judicial involvement or oversight over the terms of the settlement." *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dept. of Educ.*, 5:06-CV-139, 2008 WL 351651, *7 (W.D. Mich. Feb. 6, 2008) [hereinafter *Traverse Bay*].

In this case, Plaintiffs did not merely "settle" with the LEA. They obtained an administrative court approval that incorporated a full-throated settlement, like *Traverse Bay* requires. Part of that settlement is Exhibit A to the federal complaint— the factual admissions that the local district was not able to meet Plaintiffs' needs, but the state knowingly refused funding. (FAC Ex. A, ECF No. 12-1, PageID.151-152). Under *Buckhannon* and *Traverse Bay,* a party is not required to undertake a full trial ending in a judgment on the merits where there is indicia of judicial imprimatur.

Paragraph 18 of the Settlement Agreement with the local district clearly states: "This Agreement is made pursuant to the Parties' mutual understanding that the ALJ will review *and approve* all terms." (Def.'s Mot. Dismiss Ex. 13, ECF No. 13-5, PageID.345). The ALJ's signed Order of Dismissal states that he "reviewed the settlement agreement and *approves and adopts the terms* as outlined to the extent of

the Administrative Law Judge's and Tribunal's authority." (Exhibit 2, Order of Dismissal 1, Oct. 1, 2019). As a result, the matter was "dismissed with prejudice consistent with the parties' written agreement." *Id.*

Under the remedies' language of the IDEA, defining "appropriate" relief confers a "broad discretion" on courts. *Forrest Grove Sch. Dist. v. TA*, 557 U.S. 230, 238 (2009). This discretion extends to administrative judges. "A Hearing Officer has broad discretion to fashion a remedy" under the IDEA because "[s]itting in equity, a Hearing Officer's authority is flexible and case-specific." *Lopez-Young v. District of Columbia*, 211 F. Supp. 3d 42, 57 (D.D.C. 2016).

MDE cites the inapposite cases of *Perez v. Sturgis Public Schools*, 1:18-CV-1134, 2019 WL 6907138 (W.D. Mich. Dec. 2019), and  . (Def.'s Brief 15-27, ECF No. 13-1, PageID.181-192). First, it is difficult to understand MDE's reliance on *Perez* at all. *Perez* was not even a case against MDE. It was a routine case against the local education agency (LEA) and intermediate school district.  *Perez*, 2019 WL 6907138, at *1. Settlement *under IDEA* was reached and, thereafter, the plaintiff brought a separate federal action under the ADA, begging the question of *ADA* exhaustion. *Id.* at *4.

This Court determined the ADA claim was "at its core, an IDEA claim," such that ADA exhaustion was required *through the IDEA. Id.* The IDEA settlement

agreement—which was not reviewed and incorporated into the dismissal order—was held to be insufficient for exhaustion of the ADA claim.[4]

The only similarity of *Perez* is the existence of a settlement agreement with a local school district. But Plaintiffs here are not filing suit *against a local school district* with whom they settled under IDEA. Plaintiffs are filing against a different Defendant, with different structural claims, with whom they did *not* settle. Moreover, unlike *Perez*, the "settlement" *was* reviewed, approved, and adopted into the order of dismissal.

Next, MDE goes out of district to cite *S.B. v. California Department of Education*, 327 F. Supp. 3d 1218. In *S.B.*, the student filed due process against both the state agency, California Department of Education (CDE), along with the LEA. *Id.*, at 1231. The claims against the state were dismissed, with the student refiling them in federal court. *Id.* at 1242. Meanwhile, the student settled claims against the LEA. *Id.*

While Plaintiffs do not necessarily agree with the reasoning in *S.B.,* the facts are simply different. Unlike the present case, the *S.B.* plaintiff did not obtain a judicial imprimatur to show exhaustion (claims processing) had occurred. Nor were the claims against the state "structural" in nature. *Id.* at 1249. Thus, in *S.B.,* the

---

[4] As MDE notes, Plaintiffs' counsel are counsel in the *Perez* case. Plaintiffs in *Perez* are appealing whether a merits decision following an IDEA due process hearing is, in fact, a precondition to an ADA effective communication claim. But that issue is simply not presented here.

underlying due process simply did not address whether "the underlying LEAs were not able to provide education and special services to offer S.B. a FAPE." *Id*. at 1243.

Not so in the present case. The local district has *admitted* in the settlement agreement, approved and adopted through the Order of Dismissal, that it did "not have adequate funding to provide appropriate services to students [such as Plaintiff,]" and that, despite its pleas for help to the MDE, MDE "knowingly failed to provide consistent or meaningful assistance." (Def.'s Mot. Dismiss Ex. 13, ECF No. 13-5, PageID.345). Unlike *S.B.*, Plaintiffs carefully obtained the appropriate admissions from the local district approved by the ALJ.  And unlike S.B., the administrative tribunal did determine the claims against MDE are structural and belong in a different court.

## II.    PLAINTIFFS STATE A COGNIZABLE CLAIM UNDER ADA AND SECTION 504

Next, MDE argues Plaintiffs' Section 504 and ADA claims fail for lack of standing for associational discrimination, and lack of factual sufficiency of bad faith. (Def.'s Brief 27-35, ECF No. 13-1, PageID.192-200).

### A.    PARENTS HAVE STANDING

It is unclear whether MDE is arguing that an associational discrimination claim does not *exist,* or merely whether Plaintiffs have plead insufficient *facts*.

On the former, the Sixth Circuit clearly recognizes associational claims under the ADA and the Section 504. *MX Group, Inc. v. City of Covington*, 293 F.3d 326,

335 (6th Cir. 2002) (finding the drug treatment provider had standing to sue based on his association with individuals with disabilities); *Burton v. Cleveland Heights-University Heights City Sch. Dist. Bd. of Educ.*, No. 1:17 CV 134, 2017 U.S. Dist. LEXIS 161006, at *9 n.4 (N.D. Ohio Sep. 29, 2017) (citing to *Popovich v. Cuyahoga County Ct. of Com. Pleas, Dom. Rel. Div.*, 150 Fed. Appx. 424, 426-427 (6th Cir. 2005) (unpublished)) (acknowledging that the Sixth Circuit recognizes associational standing under the ADA and the Rehabilitation Act) (Def.'s Mot. Dismiss Ex. 16, ECF No. 13-5, PageID.375).

Moreover, the implementing regulation of Title II of the ADA specifically states, "[a] public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 35.130(g). Similarly, Section 504's enforcement measure mandates that the "remedies, procedures, and rights . . . shall be available to any person aggrieved." 29 U.S.C. § 794a(2); *MX Group Inc.*, 293 F.3d at 334.

The Sixth Circuit has determined that to have associational standing under the ADA, plaintiff must have "been denied access to or participation in any of the public services covered by Title II." *Popovich*, 150 Fed. Appx. at 427. Similarly, "the Rehabilitation Act's remedies are available to 'any person aggrieved' by discrimination based on disability. 29 U.S.C. § 794a(a)(2)." *Id.*

21

On the *facts* in this case, there is no question that MDE's discrimination against A.B. has *directly impacted* the parents to an enormous degree, in a manner differently than A.B. himself. Rather than extend A.B.'s day, the District continued with a reduced day through Fall semester 2018 (FAC ¶¶ 31-32, ECF No. 12, PageId.137). Once MDE closed the matter, the District then placed A.B. on a 45-day alternative placement. (FAC ¶¶ 21-22, ECF No. 12, PageId.134-135). In the light most favorable to the parents, with all inferences in their favor, this impacted the parents, not in terms of being denied an education like A.B., but in terms of having to *provide* one. (*See* FAC ¶¶ 21, 24, 55, ECF No. 12, PageId. 134-135, 143). If the District does not allow A.B. in school, the fair inference is that the parents are left with this responsibility.

With MDE not ensuring services and supports to A.B., A.B. lost his access to education. His parents were victimized differently. (FAC ¶¶ 21-24, ECF No. 12, PageId.134-135). A.B.'s parents were required to perform the school's functions— positively occupy and supervise A.B. nearly 24 hours a day. When A.B. did receive some hours, they were required to transport A.B. to and from school. They were required to find him suitable pursuits and create opportunities for social engagement outside of the family during periods that should have been occurring at school.

Above and beyond the immense emotional exhaustion this has caused, K.B. was also denied the opportunity to seek employment because MDE's discrimination made A.B. *her* full-time responsibility. Therefore, by becoming the *de facto* school

22

system, they have suffered their own independent injuries flowing from the discrimination against their son. *See, e.g.*, *T.C. v. Hempfield Area Sch. Dist.*, CV No. 17-1507, 2018 WL 3707419, at *9 (W.D. Pa. Aug. 3, 2018) (associational discrimination claim is stated where parent could not meaningfully attend IEP meetings due to lack of supports and information from district).

## B.    THE COMPLAINT EASILY ALLEGES DELIBERATE INDIFFERENCE

MDE overreaches in two respects regarding "deliberate indifference." First, *at most*, that standard applies to a *damages* phase under Section 504 and the ADA, not to whether there is *liability. See R.K. v. Bd. of Educ.*, 637 F. App'x 922, 925 (6th Cir. 2016); *E.F. by Fry v. Napoleon Cmty Schs.*, 12-15507, 2019 WL 4670738, at *17 (E.D. Mich. Sept. 25, 2019);[5] *see also*, *A.G. v. Paradise Valley Unified Sch. Dist., No. 69*, 815 F.3d 1195, 1207 (9th Cir. 2016).

Second, contrary to MDE's implication regarding a high level of "animus," the meaning of "deliberate indifference" is simply this: "A party acts with deliberate indifference if it disregards a 'known or obvious consequence' of its actions, namely that its actions will violate the plaintiff's federally-protected rights." *R.K. v. Bd. of Educ.*, 637 F. App'x 922, 925 (6th Cir. 2016).

---

[5] As Judge Cox noted in *E.F.*, there is also authority that deliberate indifference does not apply to compensatory damages under the ADA or Section 504. 2019 WL 4670738, at *17 (citing *I.L. v. Knox Cty. Bd. of Educ.,* 257 F. Supp. 3d 946 (E.D. Tenn. June 15, 2017)).

In *D.R. v. Michigan Department of Education*, the district court denied defendant's motion to dismiss stating,

> Plaintiffs have challenged MDE's professional judgment in oversight of the FCS, and the allocation of necessary resources, and asserted that this has caused discriminatory effects. Whether this judgment rises to the level of gross misjudgment, to qualify as discriminatory, is a question of fact that needs to be developed and brought before a trier of fact to determine. Therefore, as a threshold matter, Plaintiffs have stated a valid claim under § 504 and the ADA.

*D.R.*, 2017 WL 4348818, at *9 (E.D. Mich. Sept. 29, 2017).

In *Doe v. Ohio*, plaintiffs filed an amended class action lawsuit against the state, the governor, the state superintendent, the state board of education, and the Ohio Department of Education over the educational funding scheme in Ohio. 2:91-CV-464, 2012 WL 12985973, at *3 (S.D. Ohio Feb. 16, 2012). Plaintiffs overcame a motion to dismiss the Section 504 allegations by providing facts to support a showing that the defendants acted with bad faith or with gross misjudgment. *Id.* at 11. The allegations included that defendants deliberately ignored funding requirements, failed to take into account funding needs based on inflation, failed to fund the required student-teacher and student-to-aide ratios, and submitted a budget that underfunded special education services even while aware that the state's current system for funding education had been ruled unconstitutional by the state supreme court. *Id.* at *10. In reviewing those facts, the court denied the motion to dismiss, stating that, "[r]eviewing these allegations in the light most favorable to Plaintiffs, the Court finds

24

Plaintiffs have alleged facts from which the requisite state of mind may be inferred." *Id.*

In this case, the Complaint goes to great lengths to show a pattern of knowing failures by MDE—literally, its disregard of a known or obvious right.

First, Plaintiffs allege MDE knew about the problems from the first administrative complaint and failed in all enforcement obligations. (FAC ¶ 20, ECF No. 12, PageID.135).

Second, Plaintiffs allege MDE failed to supervise after a *second* administrative complaint directly to MDE. (*Id*. at ¶ 23, PageID.135), allowing the discrimination to continue. (*Id*. at ¶ 24, PageID.135).

Third, Plaintiffs allege MDE thwarted the local districts own efforts to obtain a program for students with emotional impairments. (*Id*. at ¶ 42, PageID.140).

Fourth, Plaintiffs allege MDE received a dismissal from the due process and, thereafter, wiped its hands of the matter and "took no further steps to intervene or assist A.B." (*Id*. at ¶ 43, PageID.140).

Fifth, Plaintiffs allege MDE "*knowingly failed to provide consistent or meaningful assistance*" to the local district, including admissions by the local district of funding disparities, particularly for students with behavioral needs. (*Id*. at ¶¶ 46-47, PageID.141).

Sixth, Plaintiffs allege MDE "knew that our District was unable to meet [A.B.'s] needs," and the Superintendent was "begging for guidance and support" from MDE. However, MDE "failed to provide the supports or guidance necessary to ensure that [A.B.'s] needs were met." (*Id*. at ¶ 49, PageID.141-142; and FAC Exhibit A, ECF No. 12-1, PageID.151). This is the hallmark of a knowing indifference to a need.

Seventh, Plaintiffs allege MDE knows of the problem with providing sufficient resources to rural communities—directly impacting A.B.—but according to the local school district (not Plaintiffs), MDE "has done virtually nothing" to address it. (FAC at ¶ 50, ECF No. 12, PageID.142; FAC Ex. A, ECF No. 12-1, PageID.152).

Rather than remaining within the confines of the Complaint and Fed. R. Civ. P. 12(b)(6), and the standard that it must be viewed in the light most favorable to Plaintiffs, MDE goes outside to focus on law enforcement and A.B. (*See* Def.'s Brief 32, ECF No. 13-1, PageID.197). However, even Defendant's refusal to support the local school district demonstrates its indifference to A.B. and his disability. As the District has explained in its letter, it does not have the ability to provide support for A.B.'s behavioral needs, MDE knows it, and MDE failed to provide assistance. (FAC Ex. A, ECF No. 12-1, PageID.151-152).

Plaintiffs also challenge the MDE's judgment and deliberate non-responsiveness. MDE determined that the District was not providing A.B. a FAPE in

December 2016. (FAC ¶¶ 15-18, ECF No. 12, PageID.132-134). Under IDEA's regulations, MDE was to ensure compliance as soon as possible but not later than one year. 34 C.F.R. § 300.600(e). Defendants failed. (*Id.* at ¶¶ 19-26, PageID.134-136).

A.B. was pushed out of school again in spring 2018 and never received a full day of school after his first day in 2015—even after MDE ordered the District into compliance. When Plaintiffs filed a state complaint against MDE for their failure to ensure compliance, MDE agreed but took no measures to ensure A.B. received a FAPE. (*Id.* at ¶¶ 23-28, PageID.135-136).

Later in their brief, MDE again departs the confines of Rule 12(b)(6), this time to make jury or summary judgment arguments about how MDE claims that it properly investigated. (Def.'s Brief 34, ECF No. 13-1, PageID.199). However, *Plaintiffs' Complaint* is the subject of consideration, with the strongest favorable inferences to the *Plaintiffs* (the non-movant), not MDE's desire to defend itself or offer a contrary inference.

Even if MDE could depart from the non-movant's inferences, and delve into the merits of MDE's investigation, when a state receives a complaint against itself, it should investigate the District too. (*See* Exhibit 3, *Questions and Answers on IDEA Part B Dispute Resolution Procedures*, OSERS 22 (July 23, 2013); Exhibit 4, *Letter to Zirkel*, OSEP 2 (July 3, 2019)).

27

MDE failed to investigate the District and determine if the District was still violating A.B.'s right to a FAPE. As the local District admits, it was so poorly equipped to provide appropriate supports for A.B. that it continually turned to the juvenile justice system for assistance. MDE only made recommendations, as if from an ivory tower. (FAC ¶¶ 31-33, ECF No. 12, PageID.137).

Instead of utilizing the power it has at its disposable to ensure compliance, MDE removed itself, and A.B. suffered for it. (FAC ¶¶ 42-50, ECF No. 12-1, PageID.140-142). There is no point in making copious recommendations to the District and then failing to ensure that any of them are actually implemented. MDE did not ensure the District was providing A.B. a FAPE even prior to the court order in January of 2019—over two years after the first state complaint.

MDE has construed its obligations so narrowly that they do not exist in practice. MDE cannot continually identify issues within a local District while taking no measures to ensure the issues are resolved. That is the *sine qua non* of deliberate indifference considering MDE has a duty to "supervise," a duty to "monitor," and a duty to "enforce."

Plaintiffs have gone well beyond what is accepted in cases like *Doe* and *D.R.* MDE's actions are longstanding, recurring, indifferent, harmful, and intentional, as the reasonable inferences from Plaintiffs' highly factual First Amended Complaint require.

For the foregoing reasons, this Court should deny Defendant's motion to dismiss the Section 504 and ADA claims.

### III.   ELEVENTH AMENDMENT IS NO BAR BECAUSE MMSEA AND MARSE ARE INCORPORATED INTO IDEA

At page 35 of its brief, MDE argues that it is immune from suit under the Eleventh Amendment under state law in federal court. (ECF No. 13-1, PageID.200). Apparently, MDE believes that the Michigan Mandatory Special Education Act ("MMSEA") and the Michigan Administrative Rules for Special Education ("MARSE") are stand-alone state acts apart from the IDEA. They are not. To be clear, Plaintiffs are *not* bringing a separate cause of action under MMSEA or MARSE; rather, the IDEA incorporates the standards of the MMSEA and MARSE.[6] Therefore, Eleventh Amendment immunity does not apply.

Under IDEA, state special education law and its higher standards are enforceable under IDEA through the "cooperative federalism" approach in which the "state substantive law supplements the Federal act." *Burlington* 736 F.2d at 785.

---

[6] Plaintiffs agree that "state law cannot provide a separate basis for relief via a pendent state claim." *See Town of Burlington v. Dep't of Educ.of Mass.*, 736 F.2d 773, 788 (1st Cir. 1984) [hereinafter *Burlington*], *aff'd sub nom. Burlington Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359 (1985). The Eleventh Amendment typically bars supplemental jurisdiction over state claims. In this case, Plaintiffs are not bringing state claims as a separate cause of action. While Plaintiff's First Amended Complaint lists the state law allegations as a separate "Count," (20, ECF No. 12, PageID.146), Plaintiffs do not view these allegations as a separate basis for relief, distinct from IDEA allegations. Instead, the state law allegations are meant to supplement the IDEA allegations in Count I. (*See* FAC 17-18, ECF No. 12, PageID.143-144.)

While Congress outlined the broad procedural and substantive strokes of the IDEA, it left the states with the role of filling in the details. *Id.*[7]

When a state law either (1) supplies the "machinery necessary" to ensure FAPE, or (2) "provide[s] . . . greater benefits" to students with disabilities, those state laws are enforceable under IDEA. *See Burlington*, 736 F.2d at 785 ("[S]tates supply the machinery necessary to effectuate the guarantees provided by the federal Act on a daily basis."); *David D. v. Dartmouth Sch. Comm.*, 775 F.2d 411, 419 (1st Cir. 1985) [hereinafter *Dartmouth*] ("Where a state has chosen to provide by law greater benefits to [students with disabilities] than the federal Act requires, we believe Congress explicitly mandated that the courts—both federal and state—determine whether those state standards have been met.") *cert. denied* 475 U.S. 1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986).

The Sixth Circuit recognizes that IDEA incorporates state standards.[8] *Doe By and Through Doe v. Board of Education of Tullahoma City Schools*, 9 F.3d 455, 457 (6th Cir. 1993) [hereinafter *Tullahoma*] (stating, in the 6th Circuit, it is "settled" that

---

[7] To receive federal funding for the education of students with disabilities, states must comply with IDEA's provisions. 20 U.S.C. § 1412(a). IDEA requires that a state educational agency ("SEA"), such as MDE, guarantee procedural safeguards for students with disabilities and their parents in the provision of a FAPE. 20 U.S.C. §§ 1412(a)(6), 1415(a). Michigan has done this. *See generally*, MMSEA, MCL § 380.1701, *et seq.*, and MARSE R 340.1700, *et seq.*; MARSE R 340.1701 ("[The MDE and all Michigan LEAs] shall comply with these rules . . . the requirements of the [IDEA]; and the regulations implementing the [IDEA] . . . , which are adopted by reference in these rules.").

[8] Defendant's reliance on *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) and *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 515 (6th Cir. 2007) is misplaced since neither case addresses the IDEA or state education laws' incorporation into IDEA.

violations of any state law that enlarges the scope of an educational agency's obligations are still enforceable under IDEA, even if federal law is satisfied) (citing *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 620 (6th Cir. 1990) (It is "beyond cavil that the federal [IDEA] standard explicitly incorporates some of a state's substantive law")).

The MDE, as SEA, is responsible as a supervisory authority under the IDEA. 20 U.S.C. § 1412(a)(11). MDE is the central point of responsibility, charged with ensuring that "each educational program for children with disabilities administered within the State. . . meets the educational standards of the SEA." 34 C.F.R. § 149(a)(2). Additionally, and distinct from the IDEA's due process requirements, the U.S. Department of Education promulgated regulations pursuant to its general rulemaking authority requiring each recipient of federal funds, including funds provided through the IDEA, to put in place a complaint resolution procedure. 34 C.F.R. §§ 300.151–300.153 (citing 20 U.S.C. § 1221e–3 as authority for rules). The regulations require each SEA, including MDE, to adopt written procedures for "[r]esolving any complaint" regarding the education of a child with a disability. 34 C.F.R. § 300.151(a).

In order to comply with IDEA and receive funds, MDE enacted the MARSE to establish a complaint resolution procedure, among other things. Without the MARSE, there would not be the "machinery necessary" to ensure the delivery of

FAPE to Michigan's students with disabilities. *Burlington*, 736 F.2d at 785. As such, MARSE is incorporated as a part of IDEA, and violations of MARSE are enforceable under the IDEA. Having created the necessary regulatory framework, MDE has consistently applied for and received IDEA funds. (FAC ¶ 5, ECF No. 12, PageId.130-131).

By accepting IDEA funds, a state's Eleventh Amendment immunity is abrogated. In 1990, Congress added 20 U.S.C. § 1403 to the IDEA to make that abrogation explicit.[9]

With the understanding that relevant state law is incorporated into the IDEA and MDE can be held responsible for violations of relevant state law, Michigan's complaint resolution procedure in the MARSE is especially relevant in this case. While other states may approach the complaint resolution process differently, Michigan drafted Part 8 of the MARSE, "State Complaints." R 340.1851-55. Michigan chose to include in the MARSE the mandatory language of MARSE R 340.1855, "Failure to comply with corrective action in a timely manner; sanctions:"

> (1)    If a public agency fails to correct known violations of law in a timely manner . . . or continues repetition of similar violations, the [MDE] shall do 1 or more of the following:

---

[9] Congress acted in response to a Supreme Court case the year earlier in which the Court found that without explicit abrogation, there was no abrogation. *Dellmuth v. Muth*, 491 U.S. 223, 109 S. Ct. 2397 (1989).

(a)     If the public agency in violation is a local school district or
        a public school academy, then the [MDE] shall direct the
        intermediate school district to provide complying programs
        . . .

(b)     . . .

(c)     Withhold federal funds under Part B of the [IDEA] . . .

(d)     Apply other penalties under [the Michigan School Code].

It was these Part 8 "State Complaint" MARSE procedures that Plaintiffs availed themselves of repeatedly before filing the present lawsuit. Under this same part, MDE repeatedly failed to provide the required general supervision under MARSE and the IDEA to ensure FAPE for Plaintiffs.

Plaintiffs submitted two administrative complaints to MDE's complaint resolution process—one alleging the failure of the District to provide FAPE and a second alleging that MDE failed to supervise and monitor the District in correcting the noncompliance found in the first complaint. (*See* FAC ¶¶ 14-28, ECF No. 12, PageID.132-136). As Defendant acknowledges, both complaints resulted in findings of noncompliance. (*See* Def.'s Mot. Dismiss Ex. 2, ECF No. 13-3, PageID.223-240; Def.'s Mot. Dismiss Ex. 9, ECF No. 13-5, PageID.272-279).

Plaintiffs also took the extra effort to seek the assistance of the Attorney General's Office in resolving MDE and the District's failure to provide Plaintiffs with a FAPE. (*See* FAC ¶¶ 29-30, ECF No. 12, PageID.136-137; Exhibit 5, Letter to AAG

33

Sept. 13, 2018). At this point, with MDE fully and repeatedly on notice of the District's inability to provide Plaintiffs with FAPE, MDE was *required* to sanction the District, according to MARSE R 340.1855. MDE's violations of Michigan's complaint resolution procedure require the context of the MARSE and are enforceable under the IDEA.

The District's Superintendent made it clear that he believed that MDE "knew that our District was unable to meet [Plaintiffs'] needs," yet "failed to provide the supports or guidance necessary to ensure that [Plaintiffs'] needs were met." (FAC Ex. A, ECF No. 12-1, PageID.151). The Superintendent stated that he was "in contact with [MDE] officials literally begging for guidance and support." (*Id.*, PageID.151) The District proposed an out-of-state "program provider to assist" the District with "building capacity" but MDE "rebuffed [District] efforts." (*Id.*, PageID.152). Again, with MDE fully and repeatedly on notice of the District's inability to provide Plaintiffs with FAPE, MDE was also *required* to step in and provide services to Plaintiffs in compliance with the IDEA. 20 U.S.C. § 1413(g)(1)(B).

The relevant sections of the MMSEA and MARSE are clearly incorporated into the IDEA such that Eleventh Amendment immunity does not apply. Accordingly, this ground for dismissal must be denied.

## IV.   STATUTE OF LIMITATIONS: ALL CLAIMS ARE TIMELY FILED AND, THEREFORE, THERE IS NO LIMITATION ON THE PERIOD OF RESPONSIBILITY

The parties generally agree that the *due process complaint* must be filed within two years of when the petitioners know or should have known about the violation. The statute's plain language states that "a parent . . . shall request an impartial *due process hearing* within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(f)(3)(C) (emphasis added).

Defendants rely on *Holden*, but that case merely reasserts that a due process complaint must be filed within two years of when petitioners knew or should have known about the violation. *Holden v. Miller-Smith*, 28 F. Supp. 3d 729, 733 (W.D. Mich. 2014) (finding that because the plaintiffs failed to timely file their due process complaint and did not establish equitable tolling as applicable in their case, plaintiffs' second federal case was dismissed for failing to exhaust and failing to establish futility).

Recently, courts have been revisiting the period of redressability in light of the two-year statute of limitations. The most thorough analysis comes from the Third Circuit Court of Appeals. *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 626 (3d Cir. 2015). Upon reviewing the IDEA's text, purpose, legislative history of the 2004 amendments, and the Department of Education's interpretation of the Act, the

Third Circuit held "Congress did not abrogate our longstanding precedent that 'a disabled child is entitled to compensatory education for a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the problem.'" *Id*. at 626 (citations omitted).

As explained in *Ligonier*, the IDEA's two-year statute of limitation represents the period for *filing* once the parents are aware. It is not the period of the *remedy*. The remedy can be the "entire period in which [the child] has been deprived." *Ligonier Valley Sch. Dist. Auth.*, 802 F.3d at 624.

The Ninth Circuit has similarly held that "the IDEA's statute of limitations requires courts to apply the discovery rule *without limiting redressability* to the two-year period that precedes the date when 'the parent or agency knew or should have known about the alleged action that forms the basis of the complaint.' 20 U.S.C. § 1415(f)(3)(C)." *Avila v. Spokane Sch. Dist.,* 81, 852 F.3d 936, 944 (9th Cir. 2017) (emphasis added).

In this case, Plaintiffs did not discover that MDE was also responsible for the FAPE violations until March 2018—the point at which they enlisted assistance from counsel. Plaintiffs filed for due process on February 21, 2019, which is within the two years statute of limitations. Since the complaint was timely filed, the period of redressability is not limited by two years.

## V.    PLAINTIFFS ARE REQUESTING MONEY DAMAGES UNDER SECTION 504 AND THE ADA

Lastly, MDE argues that monetary damages are not available under IDEA. (Def.'s Brief 36-37, ECF No. 13-1, PageID.201-202); *Long v. Dawson Springs Indep. Sch. Dist.*, 197 Fed. Appx. 427, 432 (6th Cir. 2006) (unpublished) (Exhibit 8). Plaintiffs agree, and make no such claim.[10]

However, it should be noted that when the educational deprivation is excessive—as it is in this case—Michigan courts and the Sixth Circuit approve a fund to the parents for educational use under IDEA. This fund is *not* considered "damages." *Somberg ex rel. Somberg v. Utica Cmty. Schs.*, 908 F.3d 162, 176 (6th Cir. 2018). Moreover, it should be noted that reimbursement for educational services or tuition and compensatory education are allowed under IDEA as part of the equitable remedy the court may fashion. 20 U.S.C. § 1415(i)(2)(C)(iii); *Sch. Comm. of Town of Burlington, Mass. v. Dept. of Educ. of Mass.*, 471 U.S. 359, 369 (1985); *Somberg*, 908 F.3d at 171.

For all the foregoing reasons, Defendant's Motion to Dismiss should be DENIED.

---

[10] They do make a claim for damages under the ADA and Section 504. *R.K. ex rel. J.K. v. Bd. of Educ. of Scott County, Ky.*, 637 Fed. Appx. 922, 925 (6th Cir. 2016) (unpublished).

Respectfully submitted,


Dated: April 9, 2020          */s/ Erin H. Diaz*
                              Erin H. Diaz (P80388)
                              Mitchell D. Sickon (P82407)
                              Michigan Protection and Advocacy Service, Inc.
                              4095 Legacy Parkway, Suite 500
                              Lansing, MI 48911
                              (517) 487-1755
                              ediaz@mpas.org
                              msickon@mpas.org

                              Justin S. Gilbert (Admitted March 12, 2020)
                              Gilbert Law, PLC
                              100 W. Martin Luther King Blvd., Suite 1067
                              (423) 756-8023
                              Chattanooga, TN 37402
                              justin@schoolandworklaw.com

                              *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE (E-FILE)**

I hereby certify that on April 9, 2020, I electronically filed the above-document

with the Clerk of the Court using the ECF System, which will provide electronic

copies to counsel of record.

Date: April 9, 2020                    */s/ Erin H. Diaz*
                                      Erin H. Diaz (P80388)
                                      Michigan Protection and
                                      Advocacy Service, Inc.
                                      4095 Legacy Parkway, Suite 500
                                      Lansing, MI 48911
                                      Phone: (517) 487-1755
                                      ediaz@mpas.org

## <u>PLAINTIFFS' CERTIFICATE OF COMPLIANCE</u>

This brief complies with W.D. Mich. LCivR 7.2(b)(i) because the word count is 8,895 excluding the parts that may be excluded from the word count under 7.2(b)(i). Microsoft Word from Microsoft Office 365 Pro Plus was used to create this brief.

Dated: April 9, 2020

*/s/ Erin H. Diaz*
Erin H. Diaz (P80388)
Mitchell D. Sickon (P82407)
Michigan Protection and
Advocacy Service, Inc.
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
Phone: (517) 487-1755
ediaz@mpas.org
msickon@mpas.org